## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: Jamey Albert Schmidt and                  Bky. No. 12-33918
       Keeley Ariel Schmidt,                         Chapter 13 Bankruptcy

                 Debtors.

Minnesota Housing Finance Agency,        **MEMORANDUM OPINION AND ORDER**

                 Appellant,                           Civil No. 13-434 ADM

       v.

Jamey Albert Schmidt and
Keeley Ariel Schmidt,

                 Appellees.

Mychal A. Bruggeman, Esq., Mackall, Crounse & Moore, PLC, Minneapolis, MN, on behalf of Appellant.

Timothy C. Theisen, Esq., Timothy Casey Theisen PA, Anoka, MN, on behalf of Appellees.

## I. INTRODUCTION

Appellant Minnesota Housing Finance Agency ("MHFA") appeals the United States Bankruptcy Court's Orders: (1) valuing MHFA's claim [Docket No. 1, Attach. 9] and (2) confirming the modified Chapter 13 plan of Appellees Jamey Albert Schmidt and Keeley Ariel Schmidt ("Debtors") [Docket No. 1, Attach. 8].[1] MHFA is the holder of a third-priority mortgage against the Debtors' principal residence. The value of the first mortgage exceeds the value of the Debtors' home, leaving no equity to support MHFA's mortgage. The Bankruptcy

---

[1] MHFA filed separate appeals for each Order, resulting in two district court cases, which are docketed as Civ. No. 13-433 ADM and Civ. No. 13-434 ADM. The appeals are based on the same issue of law and were consolidated under Civ. No. 13-434 ADM at the stipulated request of the parties. See Order to Consolidate Cases, March 8, 2013 [Docket No. 6]. Unless otherwise specified, all docket references are to Civ. No. 13-434 ADM.

Court Orders permit the Debtors to treat MHFA as an unsecured creditor under the Debtors' modified Chapter 13 plan and to avoid, or "strip off," MHFA's mortgage upon the Debtors' successful completion of their Chapter 13 plan. MHFA appeals, arguing the Chapter 13 plan violates the Bankruptcy Code because MHFA's claim is secured solely by a lien in the Debtors' residence, and 11 U.S.C. § 1322(b)(2) protects such claims from modification. For the reasons set forth below, the Orders of the Bankruptcy Court are affirmed.

## II.  BACKGROUND

The facts in this case are undisputed by the parties, who agree this appeal presents a question of law only.

On June 29, 2012, Debtors filed for relief under Chapter 13 of the Bankruptcy Code. Bankruptcy Petition [Docket No. 1, Attach. 1]. The Debtors' bankruptcy schedules show their home is encumbered by three mortgages. Id. at 19 (Bankruptcy Schedule D). The senior mortgage is held by U.S. Bank Home Mortgage in the amount of $154,578.20. Id. This amount exceeds the home's appraised value of $140,000. See id. The second priority mortgage, also held by U.S. Bank Home Mortgage, is for $39,451.99. Id. MHFA holds the third priority mortgage in the amount of $26,469.31. Id.; Aff. of Mary Puertos [Docket No. 1, Attach. 6] at 28-29 ("Puertos Aff.") ¶ 1, Exs. A-C. The Debtors' home is the only collateral securing the indebtedness owed to MHFA. Puertos Aff. ¶ 5.

On November 28, 2012, the Debtors filed a motion (the "Motion to Value") in bankruptcy court seeking: a determination that there was no equity in their home to support MHFA's lien; reclassification of MHFA's claim from a secured claim to a non-priority unsecured claim; and avoidance of MHFA's lien upon the Debtors' successful completion of

their Chapter 13 plan.  See generally Mot. Value [Docket No. 1, Attach. 5].  The Debtors also filed a modified Chapter 13 plan (the "Modified Plan") that treats MHFA as an unsecured creditor and requires MHFA's mortgage lien be removed from the home upon the Debtors' bankruptcy discharge.  Modified Plan [Docket No. 1, Attach. 4] ¶ 13.C.  MHFA objected to the Motion to Value and to the Modified Plan.  See MHFA Resp. Debtors' Mot. Value [Docket No. 1, Attach. 7]; MHFA Obj. Debtors' Modified Chapter 13 Plan [Docket No. 1, Attach. 6].

On January 10, 2013, the Bankruptcy Court held a hearing on the Motion to Value and the Modified Plan.  See Appellant's Br. [Docket No. 5] ADD-7 (Hr'g Tr.).  At the hearing, Bankruptcy Judge Dennis D. O'Brien voiced his personal agreement with MHFA's position that its lien should not be stripped.  Hr'g Tr. at ADD-8—ADD-11.  Nevertheless, Judge O'Brien stated his legal obligation was to follow the Eighth Circuit Bankruptcy Appellate Panel's ("BAP") decision in Fisette v. Keller (In re Fisette), 455 B.R. 177 (B.A.P. 8th Cir. 2011), which held that a bankruptcy debtor may strip off a lien on the debtor's primary residence if there is no equity in the residence to support the lien.  See id. at ADD-10.  Accordingly, Judge O'Brien granted the Motion to Value and confirmed the Modified Plan.[2]  Id. at ADD-11.  MHFA appeals both rulings.

### III.  DISCUSSION

**A.  Jurisdiction, Standard of Review**

A district court has jurisdiction over appeals from final orders of bankruptcy judges.  28 U.S.C. § 158(a)(1).  An order confirming a Chapter 13 plan is a final, appealable order.  In re

---

[2] The Order confirming the Modified Plan was signed by Chief Bankruptcy Judge Gregory F. Kishel, who is assigned to the Debtors' bankruptcy case but did not preside over the hearing due to a standing conflict of interest with cases involving U.S. Bank.

Zahn, 526 F.3d 1140, 1143 (8th Cir. 2008). Rulings leading to a confirmation order are also reviewable in conjunction with the appeal of a confirmation order. Id. A district court reviews a bankruptcy court's legal conclusions *de novo*. In re MBA Poultry, LLC, 291 F.3d 528, 533 (8th Cir. 2002).

**B. Appeal**

The single legal issue presented by MHFA's appeals is whether a Chapter 13 debtor can strip off a lien on the debtor's principal residence if no equity exists to support the lien. The issue "turns on the interplay between 11 U.S.C. § 506(a)(1) . . . and the anti-modification provision in § 1322(b)(2)." Fisette v. Keller (In re Fisette), 695 F.3d 803, 804 n.2 (8th Cir. 2012).

    **1. Section 506(a)(1)**

Section 506(a)(1) of the Bankruptcy Code divides creditors' claims against a debtor into "secured" and "unsecured" claims based on the value of the underlying collateral. Harmon v. United States, 101 F.3d 574, 578 (8th Cir. 1996). Under § 506(a)(1), an allowed claim secured by a lien on the debtor's property "is a secured claim to the extent of the value of [the] creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of [the] creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1).

In other words, a claim secured by a lien is a "secured claim" under § 506(a) "only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 239 (1989). Thus, "secured claim" is a term of art under the Bankruptcy Code, and not every claim that is secured

by a lien on collateral is a "secured claim" in bankruptcy. Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1223 (9th Cir. 2002); see also In re Sanders, 202 B.R. 986, 988 (Bankr. D. Neb. 1996) (distinguishing "secured claim" in the literal sense from "secured claim" in the bankruptcy code sense). Here, the parties do not dispute that MHFA holds only an unsecured claim under § 506(a)(1) because the value of the Debtors' home is less than the amount owed on the first mortgage, and thus no value exists to support MHFA's lien.

### 2. Section 1322(b)(2)

Section 1322(b)(2) of the Bankruptcy Code allows a debtor's Chapter 13 plan to:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). MHFA argues its rights may not be modified under § 1322(b)(2) because its claim is secured only by a security interest in the Debtors' principal residence, and thus the claim qualifies for the exception to modification found in the "other than" clause of § 1322(b)(2). MHFA further contends its rights are protected from modification regardless of the value of the Debtors' residence, because the protection given to residential mortgagees under § 1322(b)(2) is not conditioned upon a determination that the mortgagee holds a secured claim under § 506(a). Debtors respond that a residential mortgagee must be the holder of a secured claim under § 506(a) to qualify for the exception to modification under § 1322(b)(2). Debtors therefore contend that MHFA, which holds only an unsecured claim, is not protected under the statute.

5

**3. Supreme Court's <u>Nobelman</u> Decision**

The interplay of § 506(a) and § 1322(b)(2) was examined by the Supreme Court in <u>Nobelman v. Am. Sav. Bank</u>, 508 U.S. 324 (1993). The issue in <u>Nobelman</u> was whether the debtors' Chapter 13 plan could modify the claim of a bank holding a partially secured junior mortgage on the debtors' homestead. The Chapter 13 plan proposed to bifurcate the undersecured claim into secured and unsecured components under § 506(a), and to pay the bank only the amount of the secured claim, thereby stripping down the mortgage to its secured value. <u>Id.</u> at 326. The debtors argued the bank's claim could be modified in this manner because § 1322(b)(2)'s "other than" clause, also known as the anti-modification provision, applied only to the secured portion of the undersecured mortgage, and not to the bank's entire claim. <u>Id.</u> at 328.

The Fifth Circuit had rejected the debtors' argument by holding that the bank's rights as a residential mortgagee could not be modified. <u>See</u> <u>Nobelman v. Am. Sav. Bank (In re Nobelman)</u>, 968 F.2d 483, 489 (5th Cir. 1992). The Fifth Circuit viewed § 506(a) and § 1332(b)(2) as being in conflict, and concluded that the more specific provision of § 1332(b)(2) should prevail over the more general provision of § 506(a). <u>Id.</u> at 488.

The Supreme Court affirmed the holding that § 1322(b)(2) prohibited the debtors from stripping down the partially secured lien, but the high court used a different rationale to arrive at this conclusion. <u>See</u> <u>Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)</u>, 212 F.3d 277, 286 (5th Cir. 2000) (stating the Supreme Court rejected the Fifth Circuit's reasoning that § 506(a) was nullified by § 1322(b)(2), but nevertheless agreed with the end result).

The Supreme Court began its analysis of § 1322(b)(2) by observing that the statute's prohibition on modification does not apply to *claims*, but rather to the "*rights of holders*" of

secured claims. Nobelman, 508 U.S. at 328 (emphasis in original). The Court next determined the bank was the holder of a claim secured by a lien on the debtors' home, and was also the holder of a secured claim under § 506(a):

> By virtue of its mortgage contract with [debtors], the bank is indisputably the holder of a claim secured by a lien on [the debtors'] home. [Debtors] were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. It was permissible for [debtors] to seek a valuation in proposing their Chapter 13 plan, since § 506(a) states that "such value shall be determined . . . in conjunction with any hearing . . . on a plan affecting such creditor's interest." But even if we accept petitioner's valuation, the bank is still the "holder" of a "secured claim," because [debtors'] home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an "unsecured claim component" under § 506(a); however, that determination does not necessarily mean that the "rights" the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim.

Id. at 328-29 (internal citations and alterations omitted).

The Supreme Court proceeded to analyze whether § 1322(b)(2)'s exception to modification was limited to the bank's rights in the *secured* component of the claim described in the "other than" clause, or whether the exception also applied to the *unsecured* component. Id. at 330-32. The debtors argued that the "other than" clause must be read to refer to its immediate antecedent, "secured claims." Id. at 330. Under this interpretation, the protection in the "other than" clause was limited to the portion of the homestead lien that was a "secured claim" as determined under § 506(a). Id. The Supreme Court rejected this argument, noting that "Congress chose to use the phrase 'claim secured . . . by' in § 1322(b)(2)'s exception, rather than repeating the term of art 'secured claim'" used in the preceding clause. Id. at 331. The word "claim" is broadly defined by the Bankruptcy Code to include any right to payment, whether

secured or unsecured. Id. Thus, a "claim secured only by a [homestead lien]," referenced in the second clause of § 1322(b)(2), is broader than a "secured claim" referenced in the first clause, and includes both the secured and the unsecured components of an undersecured claim. Id.

The Supreme Court viewed this interpretation—that the anti-modification clause protects both the secured and unsecured components of an undersecured lienholder's claim—as the more reasonable reading of § 1322(b)(2). Id. The debtors' interpretation was administratively impossible, because the rights protected under the anti-modification clause stemmed from a single mortgage contract covering the entire claim, and the debtors could not modify the contract terms of the unsecured component "without also modifying the terms of the secured component." Id. Therefore, the Court held that § 1322(b)(2) prohibited the debtors' Chapter 13 plan from stripping down the bank's mortgage to its secured value. Id. at 332.

**4. Appellate Courts' Application of Nobelman to Completely Unsecured Mortgages**

After Nobelman, all circuit courts of appeal and all bankruptcy appellate courts to have considered whether the anti-modification provision of § 1322(b)(2) prohibits a debtor from stripping an entirely (as opposed to partially) unsecured mortgage on the debtor's residence have held that the statute does not protect such mortgages. See Branigan v. Davis (In re Davis), No. 12-1184, 2013 WL 1926407, at *4 (4th Cir. May 10, 2013); Zimmer, 313 F.3d at 1226-27; Lane v. W. Interstate Bancorp (In re Lane), 280 F.3d 663, 669 (6th Cir. 2002); Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122, 127 (2d Cir. 2001); Tanner v. FirstPlus Fin., Inc. (In re Tanner), 217 F.3d 1357, 1360 (11th Cir. 2000);[3] Bartee, 212 F.3d at 291; McDonald v. Master

---

[3] In a subsequent decision, the Eleventh Circuit stated that it felt constrained to follow Tanner, but were it to write on a clean slate it would adopt the view that a completely unsecured mortgagee is entitled to anti-modification protection. See Am. Gen. Fin., Inc. v. Dickerson (In re

Fin., Inc. (In re McDonald), 205 F.3d 606, 610-12 (3d Cir. 2000); Fisette, 455 B.R. at 182-84; Griffey v. U.S. Bank (In re Griffey), 335 B.R. 166, 170 (B.A.P. 10th Cir. 2005); Domestic Bank v. Mann (In re Mann), 249 B.R. 831, 840 (B.A.P. 1st Cir. 2000).

The Eighth Circuit Court of Appeals has not ruled on this issue; however, the Eighth Circuit BAP recently agreed with the appellate decisions holding that the anti-modification clause of § 1332(b)(2) does not apply to a creditor who does not hold a secured claim under § 506(a)(1). Fisette, 455 B.R. at 182-84.[4] Prior to the BAP's decision in Fisette, bankruptcy court decisions in the District of Minnesota had consistently held that residential mortgage holders are entitled to protection under § 1322(b)(2) regardless of the value of a debtor's residence. See, e.g., In re Loban, 426 B.R. 805, 806 (Bankr. D. Minn. 2010); In re Hughes, 402 B.R. 325, 326 (Bankr. D. Minn. 2009); In re Henline, 242 BR. 459, 464 (Bankr. D. Minn. 1999); In re Mattson, 210 B.R. 157, 158 (Bankr. D. Minn. 1997); In re Hussman, 133 B.R. 490, 493 (Bankr. D. Minn. 1991).

**5. Completely Unsecured Mortgages Not Protected**

This Court will follow the appellate court decisions holding the anti-modification provision does not apply to a residential mortgagee whose claim is wholly unsecured under § 506(a). This ruling adheres to the structure and text of § 1322(b)(2), the logic of the Supreme Court's Nobelman decision, and the policy favoring Chapter 13 reorganization over Chapter 7

---

Dickerson), 222 F.3d 924, 926 (11th Cir. 2000).

[4] The Eighth Circuit BAP's Fisette decision was appealed to the Eighth Circuit, but the appeal was dismissed for lack of jurisdiction. See Fisette, 695 F.3d at 805-07. The Eighth Circuit determined the BAP's decision was not a final order because the BAP had remanded the case to the bankruptcy court for further consideration of the debtor's plan. Id.

9

liquidation.

### a. Statutory Structure

The structure of § 1322(b)(2) consists of four clauses, which provide that a Chapter 13 plan may:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). The first clause generally permits a Chapter 13 plan to modify the rights of holders of secured claims. The second clause—the anti-modification provision—creates an exception to this general rule for claims secured only by a debtor's principal residence. The third clause permits, without exception, modification of the rights of holders of unsecured claims. The final clause permits a Chapter 13 plan to leave the rights of holders of any class of claims unaffected. As the statutory framework demonstrates, the exception to modification applies only to holders of secured claims. In re Hornes, 160 B.R. 709, 711 (Bankr. D. Conn. 1993); see also Fisette, 695 F.3d at 804 ("In a Chapter 13 case, if th[e] anti-modification proviso does not protect a *secured claim*, lien-stripping is permissible.") (emphasis added) (internal quotation marks omitted). Holders of unsecured claims receive no protection under the statute. Hornes, 160 B.R. at 711.

### b. Text

Not only does the framework of § 1322(b)(2) establish that only holders of secured claims are entitled to protection, the text of the statute demonstrates that the holder of a "claim secured only by a lien on the debtor's principal residence" is not automatically the holder of a "secured claim" under § 1322(b)(2). As the Nobelman Court observed, "Congress chose to use

10

the phrase 'claim secured . . . by' in § 1322(b)(2)'s exception, rather than repeating the term of art 'secured claim'" that was used in the preceding clause. Nobelman, 508 U.S. at 331. The phrase "claim secured only by a [homestead lien]" is broader than a secured claim and refers to "the lienholder's entire claim, including both the secured and the unsecured components of the claim." Id. A homestead lien with no equity has only an unsecured component, and thus the lienholder is not the holder of a secured claim under § 1322(b)(2). Instead, the lienholder holds only an unsecured claim, and "Section 1322(b)(2) says, without qualification and in the plainest of English, that a Chapter 13 plan 'may' modify the rights of 'holders of unsecured claims.'" Lane, 280 F.3d at 668.

### c. Nobelman Logic

The logic of Nobelman further buttresses the position that an entirely unsecured residential mortgage is not protected under § 1322(b)(2). A "key element" of the Supreme Court's conclusion in Nobelman that the mortgage could not be modified was the fact that the creditor was the holder of a secured claim under § 506(a). Bartee, 212 F.3d at 286; see also 8 Collier on Bankruptcy ¶ 1322.06[1][a] at 1322-25 (Allan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("The opinion relies on the fact that, even after bifurcation, the creditor in the case was 'still the holder' of a 'secured claim' . . . ."). Because the mortgagee was the holder of a secured claim under § 506(a), the anti-modification provision applied and protected the mortgagee's entire undersecured claim. 8 Collier, supra, ¶ 1322.06[1][a] at 1322-25. Under this rationale, had the creditor's lien been completely without value, the creditor would not have been the holder of a secured claim under § 506(a), and thus not entitled to protection under § 1322(b)(2)'s anti-modification clause. Id.

MHFA argues the Supreme Court's statements that the debtors "were correct in looking to § 506(a) . . . to determine the status of the bank's secured claim," and that the bank was "still the 'holder' of a 'secured claim,'" are merely dicta, because the holding in Nobelman states without qualification that "Section 1322(b)(2) prohibits . . . modification where, as here, the lender's claim is secured only by a lien on the debtor's residence." Nobelman, 508 U.S. at 332. MHFA contends that the lack of any reference to § 506(a) in the holding establishes that valuation under § 506(a) is not a condition precedent to establishing protection under § 1322(b)(2). Dicta are peripheral statements that may be deleted from an opinion "without seriously impairing the analytical foundation of the holding," as the statements may not have been completely and carefully considered by the court. McDonald, 205 F.3d at 612 (quoting Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075, 1084 (7th Cir. 1986). Here, the statements pertaining to valuation under § 506(a) are not peripheral. As the very first sentence of the Nobelman opinion informs, the case centered on the interrelationship of § 506(a) and § 1322(b)(2). Nobelman, 508 U.S. at 325 ("This case focuses on the interplay between two provisions of the Bankruptcy Code."). In declaring that the debtors were correct to rely on § 506(a) and that the bank was the holder of a secured claim, the Supreme Court rejected the Fifth Circuit's view that one must ignore § 506(a) when applying the anti-modification clause in § 1322(b)(2). Bartee, 212 F.3d at 286. The Court confirmed that § 506(a) is the "starting point" for determining whether § 1322(b)(2)'s anti-modification provision applies. Id. Thus, the statements are critical to the analytical foundations of Nobelman's holding and are not dicta.

McDonald, 205 F.3d at 612.[5]

### d. Policy

Interpreting § 1322(b)(2) to protect only holders of secured claims under § 506(a) also advances the policy consideration of encouraging debtors to attempt to repay their debts through a Chapter 13 reorganization. Bartee, 212 F.3d at 294-95. Were the statute interpreted otherwise, a debtor whose home is burdened with multiple mortgages exceeding the home's value might understandably opt for a Chapter 7 bankruptcy and allow the home to be sold in liquidation rather than attempt to keep the heavily encumbered home. McDonald, 205 F.3d at 614. For example, under MHFA's reading of § 1322(b)(2), the Debtors would have to pay $220,500 to keep a home worth $140,000. "A rational debtor might well decide to switch to Chapter 7, lose the home, and start over." Id.

### 6. MHFA's Arguments

MHFA advances several arguments to support its position that § 1322(b)(2) provides protection for wholly unsecured mortgagees, but none are persuasive.

### a. Legislative History

MHFA contends the legislative history of § 1322(b)(2) does not distinguish between secured and unsecured residential mortgagees when discussing protection for residential lenders, and thus Congress intended to protect all residential lenders whose liens were secured solely by a

---

[5] The Supreme Court's view that § 506(a) and § 1322(b)(2) operate in tandem, and not in isolation as MHFA argues, is also found in the high court's statements that "§ 1322(b)(2) cannot operate in combination with § 506(a) *in the manner theorized by* [*debtors*]," and that "to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan *in the manner* [*debtors*] *propose*" would violate § 1322(b)(2). Nobelman, 508 U.S. at 332 (emphases added). Had the Supreme Court viewed § 506(a) as operating independently from and having no effect on § 1322(b)(2), the italicized language would not have been necessary.

debtor's home, regardless of whether those liens had value.

However, "the legislative history and Congressional intent can be read to support both positions on this issue . . . ." Hussman, 133 B.R. at 493. A majority of courts have concluded that Congress enacted § 1322(b)(2) to increase lending for home purchases. Bartee, 212 F.3d at 292. Loans by junior mortgagees are rarely used to finance the purchase of a home, and thus junior mortgagees are more similar to other general creditors and less like the home purchase lenders Congress arguably intended to protect. Id. Absent a clear intent by Congress to protect wholly unsecured junior mortgagees, the plain meaning of § 1322(b)(2) will be followed. See Harmon, 101 F.3d at 583 ("We interpret the Code according to its plain meaning unless doing so would produce a result clearly contrary to the intent of its drafters.") (citing Ron Pair Enters., Inc., 489 U.S. at 241-42).

### b. Arbitrary and Unfair

MHFA further argues that interpreting § 1322(b)(2) to exclude wholly unsecured mortgagees from protection leads to an unfair and arbitrary result because, under this interpretation, a mortgagee whose lien is supported by only a penny of equity will have its entire lien protected, while a mortgagee with no equity in its lien will have its entire lien stripped. MHFA contends the unfairness is compounded because the important distinction between a fully protected and unprotected mortgagee depends upon the imprecise and uncertain valuation of residential property outside the marketplace.

From a debtor's standpoint, however, protecting a mortgagee whose lien is supported by only a penny of equity is already unfair to the debtor, because the mortgagee retains the right to full payment in bankruptcy, whereas outside of bankruptcy the mortgagee's rights would be far

more limited. See Mann, 249 B.R. at 837-38 ("Outside of bankruptcy, a lien with no collateral value cannot deliver any funds to the lienholder upon foreclosure. Such a lien should not deliver better rights in the bankruptcy court.").[6] Entitling a completely unsecured mortgagee to the same protection would only exacerbate this unfairness to the debtor.[7] Moreover, although judicial valuation of real property may be less than exact, valuations of real property are not overly speculative and are regularly used in the commercial world to make lending decisions. Hornes, 160 B.R. at 716. Property valuations are often used under the Bankruptcy Code to protect, modify, or abrogate important rights. Id.

### c. Absurd Result

Finally, MHFA argues that excluding completely unsecured mortgages from protection under § 1322(b)(2) leads to an absurd result here because improvements made to the Debtors' home as a result of MHFA's loan likely improved the position of the senior lienholders, thereby allowing them to consume the benefit of MHFA's loan. MHFA argues the senior lienholders and the Debtors should not reap a windfall at its expense. "A windfall, however, is in the eye of the beholder." Harmon, 101 F.3d at 585. From the Debtors' view, applying the anti-modification clause to MHFA's wholly unsecured mortgage in these reorganization proceedings

---

[6] MHFA argues that wholly unsecured mortgages retain *some* value outside of bankruptcy. However, MHFA does not deny that its interpretation of § 1322(b)(2) would entitle it to greater rights and value in bankruptcy court than it would otherwise have outside of bankruptcy.

[7] The Supreme Court's decision in Nobelman to protect the partially unsecured mortgagee was based in part on the difficulty of modifying the unsecured component of an undersecured lien without also modifying the secured component. Nobelman, 508 U.S. at 331. This difficulty is absent where the mortgage lien is completely unsecured. Zimmer, 313 F.2d at 1227.

would result in a windfall to MHFA by granting it far greater rights under the Debtors' Modified Plan than MHFA would have outside of bankruptcy.

This Court concludes a residential mortgagee must hold a secured claim under § 506(a) of the Bankruptcy Code to qualify for protection under the anti-modification provision of § 1322(b)(2). MHFA is not the holder of a secured claim under § 506(a), and so its rights may be modified. Therefore, the Bankruptcy Court did not err by allowing the avoidance of MHFA's wholly unsecured mortgage upon the Debtors' successful completion of the Modified Plan. The Orders of the Bankruptcy Court are affirmed.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. MHFA's Appeals [Docket No. 1, Attach. 10] and [Docket No. 10] are **DENIED**;

2. The Bankruptcy Court's Order Confirming Chapter 13 Plan [Docket No. 1, Attach. 8], and Amended Order Regarding Motion to Value Claim of MHFA [Docket No. 1, Attach. 9], are **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 7, 2013.